UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| MICHAEL CRAM, *an individual doing business as* PACIFIC PRODUCTIONS,<br><br>Plaintiff,<br>v.<br><br>THE FANATIC GROUP LLC,<br><br>Defendant. | Civil Action No.<br><br>2:18-CV-13531-JMV-SCM<br><br>**ON MOTION TO ENFORCE SETTLEMENT**<br><br>**[D.E. 30]** |

## REPORT AND RECOMMENDATION

**STEVEN C. MANNION**, United States Magistrate Judge.

Before the Court is Defendant, The Fanatic Group LLC's Motion to Enforce Settlement. The Honorable John Michael Vazquez, U.S.D.J., has referred the motion to the undersigned for report and recommendation. After *pro se* Plaintiff, Michael Cram, missed the deadline to file an opposition to this motion, this Court *sua sponte* extended the opposition deadline another 7 days to August 14, 2019.[1]  To date, Plaintiff has not filed an opposition to this Motion. Oral argument was held on January 7, 2020. For the following reasons, the Court respectfully recommends that the motion to enforce settlement be **GRANTED**.

---

[1] (D.E. 33, Order).

## I.     BACKGROUND AND PROCEDURAL HISTORY

This is a case about trademark infringement. Plaintiff, Michael Cram ("Mr. Cram"), became aware of Defendant's, The Fanatic Group, LLC ("Fanatic"), "Musical Pen"[2] and "Talking Bottle Opener"[3] in March 2016.[4] Mr. Cram sent a letter to Fanatic asserting trademark infringement on July 21, 2016.[5] The parties nearly settled the dispute for a lump sum of $6,000 without future royalties.[6] Mr. Cram terminated his counsel, however, before memorializing the agreement.[7] Fanatic continued to sell the musical pen and talking bottle openers for two years without hearing from Mr. Cram.[8]

On September 9, 2018, Mr. Cram initiated this action with new counsel.[9] Fanatic filed a motion to dismiss on November 10, 2018.[10] On April 10, 2019, Fanatic notified the Court that the parties had reached a settlement in principle the day before.[11] On April 12, 2019, the parties participated in a telephone settlement conference before the undersigned. The Court

---

[2] (Electronic Case Filing Docket Entry ("D.E.") 1, Compl. ¶ 1. Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page number assigned by the Electronic Case Filing System.

[3] *Id*.

[4] (D.E. 1, Compl. ¶ 28).

[5] (D.E. 30, Spiro Decl. at ¶ 5).

[6] *Id.* at ¶ 7.

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶ 9.

[9] *Id.*

[10] (D.E. 8, Def. Mot. To Dismiss).

[11] (D.E. 20, Letter).

administratively terminated the action on April 18, 2019 for 60 days pending the final settlement agreement.[12]

On April 17, 2019, Fanatic sent Mr. Cram a draft of the settlement memorializing the material terms agreed to on April 9, 2019.[13] Mr. Cram's counsel returned a redline of the agreement to Fanatic on April 24, 2019 with an added "audit and records" provision.[14] On April 30, 2019, Fanatic "largely" accepted the redline edits, including "a few minor redlines to [Mr. Cram's] edits" and resent the agreement to Mr. Cram's counsel.[15]

On May 7, 2019, Mr. Cram emailed Fanatic requesting that Fanatic agree to (1) take out assignment language and (2) provide Mr. Cram with "redacted royalty statements provided between Fanatic and IMG (formerly CLC and Collegiate Licensing Company) and Learfield Sports (formerly LRG), so that we have something to check the statements from Fanatic to Cram against to confirm the numbers."[16] Fanatic responded, accepting the first but rejecting the second term[17], then resent the agreement on May 23, 2019.[18]

On June 5, 2019, Bradley Rothschild, Mr. Cram's former counsel, filed a letter with the Court stating that the parties were unable to consummate settlement and that Mr. Cram wished to

---

[12] (D.E. 22, Order).

[13] (D.E. 30, Spiro Decl. at ¶ 14).

[14] *Id.* at 15.

[15] *Id.* at 16.

[16] *Id.* at 18.

[17] *Id.* at 19.

[18] *Id.*

re-open the case.[19] Mr. Rothschild also notified the Court that Mr. Cram would be pursuing the action *pro se*.[20] Fanatic attempted to continue settlement negotiations with Mr. Rothschild, however, he informed Fanatic that Mr. Cram was pursuing the case *pro se*.[21]

## II.      LEGAL STANDARD

A federal court may apply the substantive law of the forum state in deciding questions pertaining to the construction and enforcement of contracts.[22] Under New Jersey law, a settlement agreement between parties to a lawsuit is itself a contract that is separate and independent from the underlying dispute. New Jersey public policy favors settlements. Courts will therefore "strain to give effect to the terms of a settlement wherever possible."[23]

"Traditional contract law rules provide that a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms."[24] The burden is on the moving party to establish that the parties entered into a contract of settlement.[25]

---

[19] (D.E. 23, Letter).

[20] *Id*.

[21] (D.E. 30, Spiro Decl. at ¶ 21).

[22] *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996); *Life Ins. Co. v. Hayes-Green*, No. 07-cv-2492 (WJM), 2008 WL 2119976, at *1 (D.N.J. May 20, 2008).

[23] *Trainer v. Anderson*, Civil Action No. 2:12-CV-2409-SDW-SCM, 2017 WL 5622504 (D.N.J. Nov. 1, 2017).

[24] *Longo v. First Nat. Mortg. Sources*, 523 F. App'x. 875, 878 (3d Cir. 2013) (internal citations omitted).

[25] *LNT Merch. Co.*, 2009 WL 2169236, at *1 (D.N.J. July 21, 2009) (internal citations omitted).

4

In order to have an enforceable settlement or contract there "must be a meeting of the minds for each material term to an agreement."[26] "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract."[27] Objective manifestations of intent are controlling when determining if there was a meeting of the minds.[28]

"Where a contract of settlement is actually held to exist...the party seeking to vacate the settlement must show compelling circumstances."[29] "In general, settlement agreements will be honored absent a demonstration of fraud or other compelling circumstances.... Before vacating a settlement agreement, our courts require clear and convincing proof that the agreement should be vacated."[30]

## II.     DISCUSSION AND ANALYSIS

Fanatic has satisfied its burden of establishing that an enforceable settlement contract exists. Concomitantly, Mr. Cram has failed to show that "compelling circumstances" warrant vacating the parties' agreement.

---

[26] *Barton v. Mid-Atl. Flooring Ventures Inc.*, No. 13-4592, 2016 WL 4119803, at *4 (D.N.J. Aug. 1, 2016) (internal quotations and citations omitted).

[27] *Id.* (citing *Knight v. New England Mut. Life Ins. Co.*, 220 N.J. Super. 560, 565 (App. Div. 1987)).

[28] *See Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."); *Leitner v. Braen*, 51 N.J. Super. 31, 38 (App. Div. 1958) ("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former.").

[29] *Bowles v. New York Liberty*, 11-3529 (ES), 2014 WL 7148916, at *2 (D.N.J. Dec. 15, 2014) (quoting *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475, 703 A.2d 9 (App. Div. 1996)).

[30] *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (internal quotations omitted).

This Court finds that the parties had a "meeting of the minds" as to each material term to the settlement agreement as of April 9, 2019. The undisputed record indicates that on April 9, 2019, Fanatic offered the following terms:

> a.   Fanatic shall pay to Plaintiff a lump sum royalty of $744.60 for Fanatic's sales of allegedly infringing products based on a fifteen-cent per unity royalty to Plaintiff for one year of Fanatic's sales of the musical bottle opener's products.
>
> b.   Fanatic shall enter into a non-exclusive license with Plaintiff to use Plaintiff's intellectual property associated with its musical bottle opener products in connection with the sale of its musical bottle opener product, and to sell Fanatic's pen products under Plaintiff's patent for the term of that patent.
>
> c.   Fanatic shall pay a fifteen-cent royalty per unit to Plaintiff on its annual sales of its musical bottle opener and musical pen products. If Fanatic's total annual sales of these products does not reach 10,000 units combined for both products, Fanatic will increase its royalty paid to Pacific to twenty-cent per unit for that year.
>
> d.   In exchange, Plaintiff will take all steps necessary to secure the dismissal of the Action.[31]

That day, Mr. Cram accepted those material terms by stating "we have an agreement in principle".[32] While the words "in principle" may indicate an intent to flesh out the particulars of the agreement, New Jersey courts have consistently held that "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not

---

[31] (D.E. 30, Declaration of Jason Spiro).

[32] *Id.*

materialize because a party later reneges."[33] Thus, the parties reached a valid settlement agreement when they agreed to the essential terms.

Unsurprisingly, the next issue is whether the auditing procedure that the parties have disagreed upon is an "essential term" to the settlement. This Court finds it is not. This case is similar to *Bistricer v. Bistricer*, where the Superior Court of New Jersey found that the particular accounting procedure to a settlement agreement only "pertain[ed] to the fair implementation of the settlement. [It was] not [an] essential[] of the settlement."[34] Here, similarly, the provision regarding auditing and record keeping functions as a means to facilitate the implementation of the essential terms, but is not itself essential. Accordingly, the absence of such language does not invalidate the settlement agreement.

Mr. Cram has not provided, and this Court does not find any compelling circumstances to vacate the valid settlement contract.

### III. CONCLUSION

For the reasons articulated above, the undersigned respectfully recommends that the motion to enforce settlement be **GRANTED**. The parties have fourteen days to file and serve any objections to this Report and Recommendation.[35] The District Court need not consider frivolous,

---

[33] *Lahue v. Pio Costa*, 623 A.2d 775, 788, 263 N.J. Super. 575, 596 (N.J. Super. A.D., 1993) (quoting *Bistricer,* 231 N.J. Super. at 145, 555 *A*.2d 45.).

[34] *Bistricer v. Bistricer*, 555 A.2d 45, 48, 231 N.J. Super. 143, 149 (N.J. Super. Ch.,1987); *see Hosfeld v. Postal Transport, Inc.,* 2017 WL 5175594, at 1 (D.N.J., 2017).

[35] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

conclusive, or general objections.[36]

The Clerk of the Court is ordered to provide a copy of this report and recommendation to *pro se* plaintiff Michael Cram.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

1/7/2020 6:02:50 PM

Original: Clerk of the Court
Hon. John Michael Vazquez, U.S.D.J.
cc: All parties
    File

Mr. Michael Cram[37]
44489 Town Center #489
Palm Desert, CA 92260

---

[36] *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

[37] The District of New Jersey has implemented an electronic case filing system for all documents filed with the Clerk of the Court. *Pro se* parties may register to receive notifications via email. Mr. Cram is requested to complete the attached form and file it with our Clerk's Office to receive electronic notifications.

8

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
## Pro se (Non Prisoner)
## Consent & Registration Form to Receive Documents Electronically

Pursuant to Fed. R. Civ. P. 5(b), and Fed. R. Civ. P. 77(d), Local Civil Rule 5.2 and the Court's Electronic Case Filing Policies and Procedures, documents may be served through the court's transmission facilities by electronic means. Documents that are not permitted to be served electronically are pleadings that are to be served with process under Fed.R.Civ.P. 4.

I _____ hereby consent to receive service of documents and notice of electronic filings via the Court's electronic filing system to the extent and in the manner authorized by the above rules and waiving the right to receive notice by first class mail pursuant to Fed.R.Civ.P. 5(b)(2)(D) and Fed.R.Civ.P. 77(d).

Pursuant to Local Civil Rule 10.1, I will promptly notify the Court if there is a change in my personal data, such as name, address, and/or e-mail address. I will promptly notify the Court to request cancellation of electronic service.

Litigants who have consented to receive documents electronically will be sent a **Notice of Electronic Filing** via e-mail. Upon receipt of the notice, they are permitted **one "free look"** at the document by clicking on the hyperlinked document number. The one "free look" will expire 15 days from the date the notice was sent. After the "free look" is used or expires, the document can only be accessed through PACER (**P**ublic **A**ccess to **C**ourt **E**lectronic **R**ecords.) It is recommended that litigants establish a PACER account. This can be accomplished by visiting the PACER web site at ttp://pacer.psc.uscourts.gov. PACER is an automated system that allows an individual to view, print, and download documents for a fee.

My e-mail address is: _____

My case number is: _____

_____  _____
Signature of Litigant            Mailing Address

                                 _____
                                 City, State, Zip Code

                                 _____
                                 Telephone Number

Date: _____

9